292 A.2d 237.

EDWARD PELOQUIN *vs.* ITT HAMMEL-DAHL.

JULY 10, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. On November 19, 1970, Edward Peloquin, while working as a sub-assembler for ITT Hammel-Dahl, dropped a four-inch valve on his left foot fracturing the great toe and scraping the shin bone of his right leg. Peloquin was away from the job from November 20, 1970, until his return to Hammel-Dahl on December 14, 1970. Later, Peloquin signed a nonprejudicial agreement whereby he received the weekly compensation benefits due him because of his incapacity and Hammel-Dahl agreed to pay the medical expenses its employee had incurred in treating his injury. The agreement was approved by the Director of Labor on January 21, 1971.

Thereafter, on April 21, 1971, Peloquin took on the role of an attorney when he filed the original petition for benefits under the compensation act. The trial commissioner found for Peloquin and in doing so gave the employer credit for payments paid under the nonprejudicial agreement. The trial commissioner determined that Peloquin's wife was dependent upon him for support and gave him a dependency award of $6 a week for the three weeks he was out of work. Peloquin, however, was not satisfied with the commissioner's actions and he took an appeal to the full commission. The commission permitted Peloquin to appear before it where he offered oral argument in support of his cause. A decree was then entered affirming the findings of fact and law made by the trial commissioner. This appeal followed.

Even though we informed Peloquin that there are many who consider practice in the field of workmen's compensation to be a specialized area of the law, he insists that he will go it alone because he does not agree with the way

his former counsel "read" the compensation act.[1] Our examination of the record shows that the compensation commission has afforded employee with all benefits to which he is due and entitled under the law. Although Peloquin has filed some 30 separate reasons of appeal, we shall consider only those which deserve some discussion.

Peloquin insists that he has not been paid for the first three days he was out of work and for Thanksgiving Day, November 26, 1970. He has included as an exhibit the collective bargaining agreement between Peloquin's employer and his union. Under the contract, Thanksgiving is a paid holiday. It also provides for payment of wages for the first three days an employee is unable to work because of a job-related illness or injury, provided that the employee's incapacity does not fall within the Workmen's Compensation Act. Apparently Peloquin does not realize that the commission is not authorized to sit as a labor court and interpret the provisions of a collective bargaining agreement. We would also remind him that weekly compensation benefits were never intended to provide general health and accident insurance or full compensation for injuries suffered in one's employment. Rather, they are designed to afford a limited amount of economic assistance to cushion the financial shock brought about by the absence of a weekly paycheck. *Church* v. *Doherty*, 107 R. I. 432, 267 A.2d 693 (1970); *Geigy Chemical Corp.* v. *Zuckerman*, 106 R. I. 534, 261 A.2d 844 (1970); *DeLallo* v. *Queen*

---

[1] Peloquin is no stranger to us. He was before us earlier seeking a review of benefits awarded him for a July 1, 1964 injury. *Peloquin* v. *ITT General Controls, Inc.*, 104 R. I. 257, 243 A.2d 754 (1968). There, we affirmed the commission's rejection of the employee's view that he had been forced to return to a lower-paying job and that he was entitled to certain medical expenses and fees. At that time we pointed out that Peloquin had run through a battery of at least six different attorneys, many of whom felt it was impossible to realize what their client expected of them.

*Dyeing Co.,* 73 R. I. 325, 56 A.2d 174 (1947). Under our compensation act, an injured worker receives benefits for the first three days he is off the job only in instances where his incapacity extends beyond two weeks. If his disability lasts more than this interval, the compensation paid covers the entire period of disability.[2] Peloquin's compensation covered the first three days of his incapacity.

Peloquin argues that he should be awarded a counsel fee for himself, a witness fee for his wife and the costs of transportation involving his going to and from his doctor's office, the hospital where he was treated and the medical laboratory where he underwent certain tests.

We have repeatedly declared that the compensation commission is a creature of statute and it can exercise only those powers expressly given it by the Legislature. *M. Samas Co.* v. *Cipriano,* 110 R. I. 94, 290 A.2d 402 (1972); *Home Indemnity Ins. Co.* v. *Travelers Ins. Co.,* 109 R. I. 162, 282 A.2d 594 (1971); *Podborski* v. *William H. Haskell Mfg. Co.,* 109 R. I. 1, 279 A.2d 914 (1971); *Woods* v. *Safeway System, Inc.,* 102 R. I. 493, 232 A.2d 121 (1967). Counsel fees are awarded to the attorney who represents the successful worker. They are not paid to the pro se who represents himself. Witness fees are payable only for medical and expert witnesses. Mrs. Peloquin does not fit into either category.[3] An employee's transportation costs will be paid only when an impartial medical examination has been ordered by the commission or a medical examination requested by the employer.[4] None of Peloquin's transportation expenses were incurred in fulfilling either purpose included in the statute.

---

[2] General Laws 1956 (1968 Reenactment) §28-33-4.

[3] General Laws (1968 Reenactment) §28-35-32.

[4] General Laws (1968 Reenactment) §28-33-39.

Peloquin seeks to be reimbursed for money he expended in photo-copying certain papers, documents and records. Reimbursement for this expense cannot be had because there is no statutory authority for such a payment.

Finally, there is no merit in Peloquin's contention that his personal physician should not have been permitted to testify because he had not been furnished with a copy of the doctor's report. He points to the statute[5] which bars a physician from testifying about an employee's condition when there has been a failure to supply a copy of his report to the employee. This statutory bar applies only in those instances when the medical examination has been made by a physician who has been hired by an employer to determine the extent of his employee's injuries. Since the report in question was prepared by the employee's physician, the statute has no relevance.

The employee's appeal is denied and dismissed and the decree appealed from is affirmed.

*Edward Peloquin,* petitioner, pro se.

*Worrell & Hodge, Eldridge H. Henning, Jr.,* of Counsel, for respondent.

---

[5]General Laws (1968 Reenactment) §28-33-34.