**Robert WOLFE, d/b/a R & W Drywall, Appellant,**

v.

**FIDELITY & CASUALTY INSURANCE COMPANY OF NEW YORK; Hon. Lloyd R. Edens, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 97–CA–000462–WC.**

Court of Appeals of Kentucky.

July 24, 1998.

Harry B. O'Donnell, IV, T. J. Smith, Louisville, for Appellant.

William P. Swain, Douglas A. U'Sellis, Louisville, for Appellees.

Before COMBS, GUIDUGLI and JOHNSON, JJ.

*OPINION*

JOHNSON, Judge.

Robert Wolfe, d/b/a/ R & W Drywall (Wolfe) petitions for review of an opinion of the Workers' Compensation Board (the Board) rendered on January 24, 1997, which affirmed the determination of the Administrative Law Judge (ALJ) that Wolfe had not preserved for review his breach of contract claim against his workers' compensation insurance carrier, the appellee, Fidelity & Casualty Insurance Company of New York (Fi-

delity & Casualty). Finding no error, we affirm.

The facts necessary for an understanding of the issue in this appeal are not complex. Wolfe has been involved in the drywall business for over thirty years. On November 14, 1994, Bobby Swan (Swan) filed an application for adjustment of claim with the Board alleging that he had injured his back while working for Wolfe in February 1993. Wolfe was represented throughout Swan's proceedings before the Board by his own counsel. On June 15, 1995, Fidelity & Casualty, which had provided insurance coverage to Wolfe from July 1990 until July 1992, was added as a party. It moved to be dismissed alleging it had not provided coverage to Wolfe after July 1992. The motion was denied.[1] Thereafter, Fidelity & Casualty filed a special answer on behalf of Wolfe asserting the defense that Swan was not an employee, but an independent contractor.

A pre-hearing conference was held on March 21, 1996. The order emanating from that hearing listed the issues as follows: (1) existence of employer/employee relationship; (2) the entity responsible for benefits; (3) extent and duration of disability; (4) Swan's average weekly wage; (5) coverage; (6) notice; and, (7) existence of work-related injury in February 1993. On June 26, 1996, the ALJ rendered his opinion and order in which he dismissed Swan's claim. After expressing considerable doubt about Swan's credibility, the ALJ found that Swan failed to meet his burden of proof as follows:

> Having considered the testimony of both Mr. Wolfe and Mr. Swan, I do not accept at face value, [Swan's] uncorroborated account of the events. I find Mr. Wolfe to be more credible and I accept his testimony that he did not receive notice of the alleged injury until late 1994 and that he terminated the relationship with [Swan] due to [Swan's] undependable work habits. In light of my factual findings, I find that

---

1. There was conflicting evidence about Wolfe's status as an insured after July 1992. Further, there was evidence, even though Fidelity & Casualty had canceled Wolfe's insurance policy in July 1992 for non-payment of the renewal premium, that the insurer did not comply with the notification provisions of Kentucky Revised Stat-

utes (KRS) 342.340(2). This failure to notify the Board of the cancellation could have resulted in the insurer's liability for Swan's benefits regardless of Wolfe's status as an insured. *Travelers Insurance Co. v. Duvall*, Ky., 884 S.W.2d 665 (1994).

[Swan] did not suffer a work-related injury on February 11, 1993. As a corollary to this, I further find that [Swan's] failure to give notice to Mr. Wolfe until calendar year 1994 was not timely notice as required by KRS 342.185.

The ALJ then determined that his resolution of the issue of work-relatedness rendered the remaining issues moot.

Wolfe filed a petition for reconsideration and insisted that the issue of coverage was not moot. For the first time, Wolfe raised the issue of Fidelity & Casualty's duty to provide him with a defense and insisted that the ALJ should decide the issue of coverage and award him the costs and attorney's fees he incurred in defending Swan's claim. The petition was denied. In its review, the Board held that the issue of "coverage" raised at the prehearing conference referred only to the issue of the insurer's liability for benefits, if any, and not its duty to defend Wolfe. Even if the issue had been properly preserved, the Board held that the ALJ lacked jurisdiction to determine whether Fidelity & Casualty had a duty to defend as such a duty, if any, arose from the contract between Wolfe and insurer and not from any provision of KRS Chapter 342.

▪ In this appeal, Wolfe insists that the Board's interpretation of the term "coverage" as that term was used in the prehearing conference order was too restrictive. He argues that Fidelity & Casualty's duty to defend him was encompassed in the general issue of "coverage" and was thus properly preserved for the ALJ's consideration. We find no merit to this argument by Wolfe for two reasons. First, there is nothing in the record to indicate that Wolfe alerted the ALJ to this potential issue or that he was personally seeking damages from Fidelity & Casualty. Indeed, the only coverage issue discussed in Wolfe's memorandum before the ALJ was that of Fidelity & Casualty's liability for the payment of benefits to Swan. Second, as the Board correctly held, the duty to pay a covered risk and the duty to defend an insured are "separate and distinct obligations." *Wilcox v. Board of Education of Warren County*, Ky.App., 779 S.W.2d 221, 223 (1989), and *Wolford v. Wolford*, Ky., 662

S.W.2d 835, 838 (1984). Without a pleading or argument that Wolfe intended to litigate Fidelity & Casualty's duty to defend, the use of the term "coverage," in the context of a worker's compensation hearing, would not implicate coverage issues other than those affecting the worker.

▪ In any event, we are convinced that the Board was correct in its determination that the issue of whether Fidelity & Casualty owed Wolfe a defense in this matter is not appropriate for resolution in the administrative process. Clearly, any coverage issue which impacts an insurer's obligation to pay compensation benefits is appropriate for the ALJ's resolution. *Lawrence Coal Co. v. Boggs*, 309 Ky. 646, 650–652, 218 S.W.2d 670 (1949). However, the separate contractual duties owed to the employer/insured are governed by the policy of insurance and not by any provisions of KRS Chapter 342. Interpretation of insurance contracts and the enforcement of the rights of the insured concern matters which are beyond the purview of the authority vested in the ALJ.

Wolfe's reliance on *Motorists Mutual Insurance Company v. Terry*, Ky., 536 S.W.2d 472 (1976), is misplaced. In that case the Court held that the Board was competent to determine whether the insurer had a policy covering the claim of a worker against the employer.

> The issue of coverage being within the jurisdiction of the Board, as held in *Lawrence Coal Co. v. Boggs, supra*, there is no compelling reason why it should be entertained in a declaratory judgment proceeding, and there is a good and sufficient policy consideration to the contrary. The Workmen's Compensation Act is for the benefit of workmen, who often do not have the financial means demanded by conventional litigation. They should not be required to fight on two fronts, and it is not necessary to a proper resolution of the insurance company's rights that they be required to do so.

*Id.* at 473–474. *Terry* does not mention the duty to defend, nor does it suggest that such an issue is appropriate for administrative determination.

Wolfe further relies on the principle stated in A. Larson, *The Law of Workmen's Compensation*, § 92.41 (1996) (footnotes omitted):

> The general rule appears to be that, when it is ancillary to the determination of the employee's rights, the compensation commission has authority to pass upon a question relating to the insurance policy, including fraud in procurement, mistake of the parties, reformation of the policy, cancellation, existence or validity of an insurance contract, coverage of the policy at the time of injury, and construction of extent of coverage. This is, of course, in harmony with the conception of compensation insurance as being something more than an independent contractual matter between insurer and insured.

However, the same treatise also states that "when the rights of the employee in a pending claim are not at stake, many commissions disavow jurisdiction and send the parties to the courts for relief." *Id.* § 92.42. Cases included in this subsection of Professor Larson's treatise include those where the question is "purely one between two insurers" or "when the insured and insurer have some dispute entirely between themselves about the validity or coverage of the policy or the sharing of the admitted liability." *Id. See also, United States Fidelity and Guaranty Co. v. Town of West Warwick*, 119 R.I. 458, 379 A.2d 924 (1977) (no board jurisdiction for resolution of contractual dispute between insurer and insured regarding reimbursement provisions of insurance contract); *Shada v. Whitney*, 172 Neb. 220, 109 N.W.2d 167 (1961) (question of contract interpretation outside jurisdiction of board); *Delke v. Scheuren*, 185 Mich.App. 326, 460 N.W.2d 324 (1990) (board without authority to decide whether insurance carrier owed employer a duty to defend in retaliatory discharge action brought before the board).

Finally, Wolfe insists that the provisions of KRS 342.325 confer the Board with jurisdiction over this dispute. This statute reads as follows:

> All questions arising under this chapter, if not settled by agreement of the parties interested therein, with the approval of the arbitrator or administrative law judge, shall be determined by the arbitrator or administrative law judge except as otherwise provided in this chapter.

Simply stated, the questions concerning Fidelity & Casualty's duty to defend Wolfe, whether it breached that duty and the damages to which Wolfe is entitled, if any, are not questions "arising under" Chapter 342. The Board does not have the authority to resolve contractual matters between the insurer and employer that are totally independent of the compensability of the employee.

Accordingly, the opinion of the Board is affirmed.

All concur.