COMMONWEALTH of Kentucky,
CENTRAL STATE HOSPITAL,
Appellant,

v.

Craig GRAY; Vicki G. Newberg, Acting Director of Special Fund; and Workers' Compensation Board, Appellees.

No. 94–SC–64–WC.

Supreme Court of Kentucky.

June 23, 1994.

As Corrected Sept. 6, 1994.

James Gordon Fogle, William A. Miller, Sr., and John G. Grohmann, Ferreri & Fogle, Louisville, for appellant.

Edwards A. Mayer, Louisville, for appellee Gray.

Mark C. Webster and Joel D. Zakem, Labor Cabinet, Special Fund, Louisville, for appellee Newberg.

## OPINION OF THE COURT

Claimant, a licensed practical nurse, injured his back at work on October 1, 1989, when he was shoved by an unruly psychiatric patient and struck his low back against a stair railing. Later that day, while assisting in lifting the same patient, he again was shoved to the floor. His injuries required back surgery, and it was determined that he was temporarily totally disabled for various periods up until October 24, 1990, at which time he reached maximum medical improvement. The Administrative Law Judge (ALJ) awarded claimant a 50% permanent, partial occupational disability and apportioned half of the award to the employer and half to the Special Fund. It was determined that claimant's permanent disability was, in part, caused by the arousal of preexisting dormant degenerative conditions. Therefore, the award was apportioned pursuant to KRS 342.1202. The employer was held liable for all temporary total disability (TTD) benefits.

This case concerns whether KRS 342.1202, from its enactment in 1987 until it was amended in 1990 specifically to provide otherwise, required that awards of TTD benefits in claims involving preexisting back or heart conditions be apportioned equally between the employer and the Special Fund.

█ Until KRS 342.1202 was enacted in 1987, KRS 342.120 controlled the apportionment of all workers' compensation awards. Although the statute holds the Special Fund liable for any "additional permanent disability" caused where the work-related injury is superimposed on a preexisting or previously dormant condition, it is silent regarding the apportionment of temporary disability. In an opinion which recognized the specific language of KRS 342.120 as well as the fact that a worker's TTD is caused primarily by the work-related injury, this Court interpreted KRS 342.120 as requiring the employer to pay all TTD benefits, even where the entire permanent disability award was the responsibility of the Special Fund. *Proven Products Sales & Service v. Crutcher,* Ky., 464 S.W.2d 800 (1971). The Court noted that the Special Fund was responsible for benefits only where explicitly stated, and KRS 342.120(3) held the Special Fund liable only for permanent disability benefits which resulted, in part, from a preexisting or previously dormant condition. *Id.* at 802. Therefore, the Special Fund was not liable for TTD benefits.

KRS 342.1202, as enacted in 1987, provided as follows:

An award for income benefits for total or partial disability under this chapter based, whole or in part, on a pre-existing disease or pre-existing condition of the back or of the heart shall be apportioned, by the administrative law judge, fifty percent (50%) to the employer and fifty percent (50%) to the special fund. Apportionment required by this section shall not be a cause of appeal.

Like KRS 342.120, which controlled the apportionment of all workers' compensation awards before the effective date of KRS 342.-1202 and which continues to control the apportionment of all awards other than those for conditions of the back and heart, the 1987 version of KRS 342.1202 did not explicitly address the apportionment of temporary disability awards. However, unlike KRS 342.-120, the 1987 version of KRS 342.1202 did not explicitly state that the Special Fund was liable for permanent disability. It referred only to total or partial disability. Although the apportionment scheme of KRS 342.1202 was not explicitly limited to permanent disability until the effective date of the 1990 amendment, at which time the word "permanent" was inserted before the words "total or partial disability," we are not convinced that the legislature's failure to include the word "permanent" until 1990 requires the statutory interpretation urged by the employer.

The 1987 Special Session was, in part, an attempt to deal with the escalating and unfunded liability of the Special Fund. At that time KRS 342.1202 was enacted in an apparent response to judicial decisions which had shifted liability from the employer to the Special Fund, particularly in cumulative trauma and gradual injury cases as well as in heart attack cases. *Haycraft v. Corhart Refractories,* Ky., 544 S.W.2d 222 (1976); *Wells v. Boyd,* Ky.App., 715 S.W.2d 906 (1986); *Southern Kentucky Concrete Contractors, Inc. v. Campbell,* Ky.App., 662 S.W.2d 221 (1983); *OK Precision Tool & Die v. Wells,*

Ky., 678 S.W.2d 397 (1984); *Wells v. Bailey,* Ky.App., 698 S.W.2d 841 (1985); *Stovall v. Dal–Camp, Inc.,* Ky.App., 669 S.W.2d 531 (1984). In fact, in *Dal–Camp,* the Court recognized the effect of its decision and explicitly encouraged the legislature to review the issue of apportionment in heart attack cases. *Id.* at 535–36.

In view of the Special Fund's financial problems in 1987, two apparent goals of statutorily mandated apportionment in back and heart attack cases would have been to reduce the cost of litigation by eliminating an area of dispute and to lower the amount of assessments necessary to meet the liability of the Special Fund. By assuring that employers would be liable for no less than 50% of the workers' compensation awards in those cases, the legislation also assured that employers would be encouraged to make the workplace as safe as possible in an attempt to reduce the number of claims altogether. Shifting liability to the Special Fund for temporary disability benefits in those same cases would have worked at cross purposes, producing an absurd result. In construing statutory provisions, it is presumed that the legislature did not intend an absurd result.

In view of the historic treatment of temporary disability, the apparent purpose of the legislature in enacting KRS 342.1202, the fact that TTD is caused primarily by the work-related injury, and the fact that the legislature did not explicitly indicate that it intended a policy shift which would hold the Special Fund liable for a portion of TTD for back and heart attack cases, we conclude that the 1990 amendment to KRS 342.1202 represented only a clarification of the legislature's continuing policy of holding employers liable for all TTD benefits rather than evidence of a change in that policy only for cases involving conditions of the back and heart. TTD in all workers' compensation cases was the responsibility of the employer before KRS 342.1202 was enacted, it remained the responsibility of the employer throughout the period during which the 1987 version of KRS 342.1202 was effective, and it continued to remain the responsibility of the employer after the effective date of the 1990 amendment.

The decision of the Court of Appeals is hereby affirmed.

All concur.