RENDERED: JANUARY 24, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0694-ME

Z.C., A CHILD UNDER THE AGE OF EIGHTEEN                APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
FAMILY COURT DIVISION
V.          HONORABLE ABIGAIL E. VOELKER, JUDGE
ACTION NO. 24-J-00106-001

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND KAREM, JUDGES.

EASTON, JUDGE: The Appellant, Z.C., a child under the age of eighteen

("Child"), appeals from the Campbell Family Court's Order finding Child in

contempt. Child was sentenced to ten days in juvenile detention, with eight of

those days conditionally discharged. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

During the 2023-2024 school year, Child was a freshman in high school. On February 7, 2024, a Juvenile Complaint for Status Offense alleging habitual truancy was filed by a family court liaison with Child's school. On February 15, 2024, the Court Designated Worker ("CDW") determined the case was appropriate for informal processing. But the Campbell County Attorney recommended the case for formal processing eleven days later. The petition was filed with the family court on March 8, 2024.

Child was arraigned on April 4, 2024. At arraignment, the family court entered a denial on Child's behalf. At this hearing, the family court outlined the pre-adjudicative terms to Child, which included being in school every day and being on time for school, not leaving home without permission, obeying the law, working on improving grades, and following the rules of the school. The form titled Pre-Adjudicative Court Ordered Terms-Status Offense was signed by Child, Child's mother, the Child's court-appointed attorney, and the County Attorney.

On April 26, 2024, the County Attorney filed a Motion for Contempt, alleging Child had violated the April 4 court order. The motion indicated Child had violated the written rules of the school and had five unexcused absences since the order was entered. A pretrial conference and contempt hearing was held on May 9, 2024.

At the contempt hearing, the family court liaison who initially filed the truancy charges testified that Child had been involved in a physical altercation at school, in which several students and adult staff members were injured. Child was suspended, and later expelled, from school due to this incident, leading to the unexcused absences. The County Attorney indicated he intended to file a petition for a public offense due to this incident. He requested 30 days of detention for violating the court's order.

Child's counsel objected to the contempt hearing occurring at all, as he argued there was not a valid court order in place that the Child could have violated. Both the County and the family court disagreed. Child additionally argued that Child was not willfully refusing to go to school; Child was not allowed to go because of the suspension.

Child's counsel also belatedly argued during closing arguments that some of the testimony presented was hearsay, as there was no testimony that the witness personally observed the altercation. Yet the witness could testify about the documented unexcused absences and the documented reasons for them. Child then requested graduated sanctions in lieu of detention.

The family court found Child to be in contempt of a valid court order and sentenced Child to ten days in juvenile detention, with eight of those days conditionally discharged. This appeal follows.

## STANDARD OF REVIEW

"Contempt is the willful disobedience toward, or open disrespect for, the rules or orders of a court." *Commonwealth v. Burge*, 947 S.W.2d 805, 808 (Ky. 1996). Appellate review of a finding of contempt is governed by the abuse of discretion standard. *Meyers v. Petrie*, 233 S.W.3d 212, 214 (Ky. App. 2007). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound reasonable principles." *Penner v. Penner*, 411 S.W.3d 775, 779-80 (Ky. App. 2013). The clear error standard applies to the findings of fact by the family court. *Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). We review a family court's legal conclusions under the *de novo* standard. *Brewick v. Brewick*, 121 S.W.3d 524, 526 (Ky. App. 2003). "The construction and application of a statute is a question of law, which we review *de novo*." *Petitioner F v. Brown*, 306 S.W.3d 80, 86 (Ky. 2010).

## ANALYSIS

Child claims the family court made several errors in its finding of contempt. First, Child claims the family court lacked jurisdiction because the statutory pretrial procedures were not followed prior to the petition being filed in court. Child argues the family court did not have authority to find Child in contempt and detain Child in custody because a valid court order did not exist.

-4-

Child contends there was insufficient evidence to find contempt. Finally, Child argues it was error for the family court to fail to hold a separate Disposition Hearing. The Attorney General argues this Court should dismiss the appeal as moot. Child responds that this Court should not dismiss, even if the case is moot, because the issue is one capable of repetition, yet evading review. Child further argues this case should be reviewed based on the public interest exception to the mootness doctrine.

"Our courts have long recognized that '[a] 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy.'" *Beshear v. Goodwood Brewing Co., LLC*, 635 S.W.3d 788, 797 (Ky. 2021) (emphasis in original) (citing *Benton v. Clay*, 233 S.W. 1041, 1042 (Ky. 1921)). "The long-standing general rule is that 'where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed.'" *Id.* at 797-98 (citing *Louisville Transit Co. v. Dep't of Motor Transp.*, 286 S.W.2d 536, 538 (Ky. 1956)).

The Attorney General argues this case should be dismissed as moot for several reasons. Child was charged with a public offense for the actions which led to the finding of contempt, thus the family court transferred the case to district

-5-

court. The family court therefore is no longer exercising jurisdiction over this action. During the course of briefing for this appeal, Child's cases, including both the original truancy charge and the subsequent public offense, were adjudicated, and a separate Disposition Order has been entered. The contempt order from the family court was not incorporated into the district court's Disposition Order, and therefore the additional eight days cannot be imposed.

Child seems to concede the issue is moot but argues that this Court should still issue a decision on the merits because it meets two exceptions to the mootness doctrine. Child contends the issue is "capable of repetition, yet evading review" and it also meets the public interest exception.

> Whether to apply the exception to the rule that a case will be dismissed when the issues are moot which we have recognized when the issues are "capable of repetition, yet evading review," involves more than just an important public question that is difficult to review. Our courts do not function to give advisory opinions, even on important public issues, unless there is an actual case in controversy. The decision whether to apply the exception to the mootness doctrine basically involves two questions: whether (1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration and [2] there is a reasonable expectation that the same complaining party would be subject to the same action again.

*Philpot v. Patton*, 837 S.W.2d 491, 493 (Ky. 1992) (internal quotation marks and citations omitted).

Child is fifteen and argues the family court will have jurisdiction over any future status offenses until Child reaches age eighteen, meaning this issue is capable of repetition. Child claims it is possible for the same circumstances to arise again. Child further argues that because the duration of juvenile contempt sentencings is very short, the exception applies.

"'Capable of repetition, yet evading review' is a well-recognized exception to the mootness doctrine, although one to be used sparingly." *Riley v. Gibson*, 338 S.W.3d 230, 233 (Ky. 2011). We do not believe this exception should be applied here. First, it is unlikely, albeit possible, that Child will undergo these same circumstances again in the next two and one-half years. This Court has determined in the past that juvenile contempt cases can meet this exception. *See C.S. v. Commonwealth*, 559 S.W.3d 857, 865 (Ky. App. 2018) ("Contempt orders, especially ones involving juveniles, are often of very limited duration"). However, the facts of this case are distinguishable from those in *C.S.*

In *C.S.*, the juvenile was found to be in contempt and was ordered to be detained for a "time period not to exceed six months." *Id.* at 864. C.S. appealed the contempt finding but was released from detention during the pendency of the appeal. The family court still maintained jurisdiction over C.S. and could have still enforced the prior contempt sentence.

In the current action, the family court is no longer exercising jurisdiction over Child's case. The case was transferred to district court upon the filing of the public offense charge, and that district case is ongoing. The contempt finding with the conditionally discharged eight days was not incorporated into the district court's Disposition Order. Furthermore, both Child's initial status offense and subsequent public offense have been adjudicated. If Child is again charged with contempt for violations of a valid court order relating to the public offense, the district court will be the court to hear it. Many of the errors Child asserts the family court made in this case would not be applicable, as Child has now been adjudicated as a public offender in district court.

Child additionally argues the public interest exception applies. "The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *Morgan v. Getter*, 441 S.W.3d 94, 102 (Ky. 2014). "[T]he public interest exception must not only involve public questions and be capable of repetition. We must be vigilant and use our discretion only when a demonstrated need justifies a ruling from this Court. Otherwise, the public interest exception would be so broad as to virtually eliminate the notion of mootness. Consequently, we have carefully cabined our review for

instance to matters of first impression[.]" *Commonwealth v. Collinsworth*, 628 S.W.3d 82, 87 (Ky. 2021) (internal quotation marks and citations omitted).

It is within this Court's discretion to consider a moot case under the public interest exception when we determine a case involves "matters of the utmost public importance." *Muhammad v. Kentucky Parole Bd.*, 468 S.W.3d 331, 338 (Ky. 2015). We decline to exercise that discretion in this instance. There is sufficient case law addressing the substantive issues involved here. Such issues will arise again in some future case, and if different circumstances require present a matter of first impression, then an opinion will be necessary to determine a ripe controversy.

While we recognize that the later events in the related public offense prosecution did not incorporate this prior contempt finding, there are still collateral consequences pertaining to this finding of contempt. Collateral consequences of a decision, although otherwise moot, may still justify an appellate court in determining the appeal. *See Calhoun v. Wood*, 516 S.W.3d 357 (Ky. App. 2017). While juvenile records may not impact Child the same as records of future adult offenses, the family or district court still dealing with Child until aged eighteen will know of the prior contempt conviction, and this may influence future decisions about penalties to be imposed. Child has sufficient ongoing personal interest in

whether the contempt ruling was proper to avoid dismissal of this appeal on mootness grounds. At any rate, we determine Child's arguments have no merit.

Child first alleges the family court did not have subject matter jurisdiction to hear this case at all. Child argues that KRS[1] 610.030 requires the CDW to take certain measures prior to filing a petition in court and that those measures were not taken in this action. While Child is correct that the statute does require certain actions to be taken before a CDW can file a status offense petition in court, Child overlooks the final portion of the statute. KRS 610.030(12) states "[a]t any stage in the proceedings described in this section, the court or the county attorney may review any decision of the court-designated worker. The court upon its own motion or upon written request of the county attorney may refer any complaint for a formal hearing." That is precisely what occurred in this action. While the CDW initially determined the case was appropriate for informal processing, the County Attorney disagreed, and referred the petition for formal processing. This is clearly allowed and anticipated by the statute.

Child next argues there was no valid court order in place and further makes the assertion that a valid court order cannot exist for a juvenile who is pre-adjudication. This argument also has no merit.

> "Valid court order" means a court order issued by a judge
> to a child alleged or found to be a status offender:

---

[1] Kentucky Revised Statutes.

-10-

(a) Who was brought before the court and made subject to the order;

(b) Whose future conduct was regulated by the order;

(c) Who was given written and verbal warning of the consequences of the violation of the order at the time the order was issued and whose attorney or parent or legal guardian was also provided with a written notice of the consequences of violation of the order, which notification is reflected in the record of the court proceedings; and

(d) Who received, before the issuance of the order, the full due process rights guaranteed by the Constitution of the United States[.]

KRS 600.020(71).

Child argues that because the order was issued pre-adjudication, Child did not receive full due process rights. We disagree. At arraignment, Child was advised of the charges in the status offense petition, was appointed counsel who was present, was advised of constitutional rights, and was explicitly informed of the conduct that was prohibited by the pre-adjudicative order. Written in the order is a warning that violating the terms of the order could lead to contempt and detention. Child, Child's mother, Child's attorney, and the County Attorney all acknowledged the terms by signing the order. The required due process was met here.

If we accept Child's argument, then it would deny courts the ability to enforce any orders or prohibit any behavior prior to a case being adjudicated. This

-11-

cannot be the intended result of the legislature. "In construing statutory provisions, it is presumed that the legislature did not intend an absurd result." *Commonwealth, Cent. State Hosp. v. Gray*, 880 S.W.2d 557, 559 (Ky. 1994). Furthermore, this interpretation ignores the first sentence of the definition for a valid court order, which defines it as a "court order issued by a judge to a child *alleged or found* to be a status offender[.]" If a valid court order can only exist post-adjudication, the term "alleged" would not have been included in the statute.

Child argues the evidence submitted to the family court was insufficient to find Child in contempt. We disagree. Child was ordered to obey the rules of the school and to not have any unexcused absences. There was testimony that Child was suspended, and later expelled, from school due to Child's role in a physical altercation involving multiple people. This was clearly sufficient evidence of contempt. The weighing of evidence is within the exclusive province of the trial court. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

Finally, Child argues it was error for the family court to not hold a separate Disposition Hearing after finding Child in contempt. The statute requiring bifurcated proceedings, KRS 610.080, applies to the underlying offense, not contempt hearings. There is no support cited for the argument that a contempt hearing in juvenile cases requires two separate hearings. KRS 600.060 states "[n]otwithstanding any other provision of KRS Chapter 600 to 645, the inherent

contempt power of the court shall not be diminished, except that an order of detention for a child found in contempt shall not exceed thirty (30) days." Additionally, while the discussion was brief, the family court did discuss options other than detention, but it determined detention was appropriate in this case, based on the behavior of Child. The family court also found Child to be a danger to both Child and to others. The family court committed no error in this instance.

## CONCLUSION

Regardless of any argument for mootness in this case, which has required our application of multiple mootness doctrines, we conclude that the contentions of error relating to the contempt ruling are without merit. The County Attorney properly called for formal processing as allowed by law. Child clearly violated a valid court order because of unexcused absences, and proper evidence submitted at the contempt hearing sustained the decision of the family court. We affirm the Campbell Family Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sarah D. Langer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

J. Grant Burdette
Assistant Solicitor General
Frankfort, Kentucky